Filed 10/1/18

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----


| | |
|---|---|
| PARADISE IRRIGATION DISTRICT et al., | |
| Plaintiffs and Appellants, | C081929 |
| v. | (Super. Ct. No. 34201580002016) |
| COMMISSION ON STATE MANDATES, | |
| Defendant and Respondent; | |
| DEPARTMENT OF WATER RESOURCES et al., | |
| Real Parties in Interest and Respondents. | |


APPEAL from a judgment of the Superior Court of Sacramento County, Timothy M. Frawley, Judge. Affirmed.

MINASIAN, MEITH, SOARES, SEXTON & COOPER, Dustin C. Cooper, Andrew J. McClure, Peter C. Harman for Paradise Irrigation District, South Feather Water & Power Agency, Richvale Irrigation District and Oakdale Irrigation District; SOMACH SIMMONS & DUNN, Andrew M. Hitchings and Alexis K. Stevens for Biggs-West Gridley Water District and Glenn-Colusa Irrigation District, Plaintiffs and Appellants.

Jennifer B. Henning for California State Association of Counties and The League of California Cities; LOZANO SMITH, Sloan R. Simmons, Anne L. Collins and Nicholas J. Clair for California Special Districts Association, Association of California

Water Agencies and California Association of Sanitation Agencies as Amici Curiae on behalf of Plaintiffs and Appellants.

Camille Shelton and Matthew B. Jones for Defendant and Respondent.

Xavier Becerra, Attorney General, Douglas J. Woods, Thomas S. Patterson, Senior Assistant Attorneys General, Marc A. LeForestier, Supervising Deputy Attorney General and Peter H. Chang, Deputy Attorney General for Real Parties in Interest and Respondents.

This appeal focuses on circumstances in which local water districts may be entitled to subvention for unfunded state mandates. "Subvention" refers to claims by local governments and agencies in California for reimbursement from the state for costs of complying with state mandates for which the mandate does not concomitantly provide funds to the local agency. (*Connell v. Superior Court* (1997) 59 Cal.App.4th 382, 395 (*Connell*).) In the event a local agency believes it is entitled to subvention for a new unfunded state mandate, the agency may file a "test claim" with the Commission on State Mandates (Commission). The Commission hears the matter and determines whether the statute or executive order constitutes an unfunded state mandate for which subvention is required.

Here, the Commission denied consolidated test claims for subvention by appellants Paradise Irrigation District (Paradise), South Feather Water & Power Agency (South Feather), Richvale Irrigation District (Richvale), Biggs-West Gridley Water District (Biggs), Oakdale Irrigation District (Oakdale), and Glenn-Colusa Irrigation District (Glenn-Colusa). We refer to appellants collectively as the Water Districts, except when addressing individual appellants' separate claims. The Commission determined the Water Districts have sufficient legal authority to levy fees to pay for any water service improvements mandated by the Water Conservation Act of 2009 (Stats. 2009-2010, 7th

2

Ex. Sess., ch. 4, § 1 (Conservation Act)).  The trial court agreed and dismissed a petition for writ of mandate brought by the Water Districts.

On appeal, the Water Districts present a question left open by this court's decision in *Connell, supra,* 59 Cal.App.4th 832.  *Connell* addressed the statutory interpretation of Revenue and Taxation Code section 2253.2 (Stats. 1982, ch. 734, § 10, pp. 2916-2917) that has been recodified in pertinent part without substantive change in Government Code section 17556 (added by Stats. 1984, ch. 1459, § 1, pp. 5113-5119).  (*Connell*, at pp. 397-398 & fn. 16.)  Based on the statutory language, *Connell* held local water districts are precluded from subvention for state mandates to increase water purity levels insofar as the water districts have legal authority to levy fees to cover the costs of the state-mandated program.  (*Id.* at p. 401.)  In so holding, *Connell* rejected an argument by the Santa Margarita Water District and three other water districts (collectively Santa Margarita) that they did not have the "practical ability in light of surrounding economic circumstances."  (*Id.* at p. 401.)  This court reasoned that crediting Santa Margarita's argument "would create a vague standard not capable of reasonable adjudication.  Had the Legislature wanted to adopt the position advanced by [Santa Margarita], it would have used 'reasonable ability' in the statute rather than 'authority.' "  (*Ibid.*)

In *Connell, supra,* 59 Cal.App.4th 832, this court declined to consider a passing comment by Santa Margarita that the then-recent passage of Proposition 218 (as approved by voters Gen. Elec. Nov. 5, 1996, eff. Nov. 6, 1996 <https://elections.cdn.sos.ca.gov/sov/1996-general/official-declaration.pdf> [as of Sept. 27, 2018], archived at <https://perma.cc/8FY6-2ULJ>) (Proposition 218) meant that "the authority of local agencies to recover costs for many services [is] impacted by the requirement to secure the approval by majority vote of the property owners voting, to

3

levy or to increase property related fees." (*Connell*, at p. 403.)  This appeal addresses that issue by considering whether the passage of Proposition 218 changed the authority of water districts to levy fees so that unfunded state mandates for water service must now be reimbursed by the state.

The Water Districts argue Proposition 218 removed their prerogative to impose fees because any new fees may be defeated by a majority of their water customers filing written protests.  The Districts also challenge the Commission's ruling it lacked jurisdiction to consider reimbursement claims by Richvale and Biggs because those two districts have not shown they collect any taxes.  In support of the Water Districts' position, we have received and considered two amicus curiae briefs: one from the California State Association of Counties and League of California Cities (collectively the Counties and Cities), and one from the California Special Districts Association, Association of California Water Agencies, and California Association of Sanitation Agencies (collectively the Special Districts).  We also have received briefing from real parties in interest, the Department of Finance and Department of Water Resources.

We conclude Proposition 218 does not undermine the holding in *Connell, supra,* 59 Cal.App.4th 832, which addressed the authority of water districts to levy *fees*. Proposition 218 was intended to address only the imposition of *taxes*.  Thus, the Commission properly denied the reimbursement claims at issue in this case because the Water Districts continue to have legal authority to levy fees even if that authority is subject to majority protest of water district customers.  We further conclude the Commission properly rejected the claims for subvention by Richvale and Biggs.  Both water districts have authority to levy *fees* even though these districts profess not to be able to collect *taxes*.

4

Accordingly, we affirm.

BACKGROUND

### *The Water Districts' Test Claims*

In 2011, the Water Districts filed a joint test claim with the Commission. The Water Districts asserted the Conservation Act "imposes unfunded state mandates to conserve water and achieve water conservation goals on local public agencies that are 'urban retail water suppliers' and/or 'agricultural water suppliers.' " In 2013, Richvale and Biggs filed a second test claim asserting various regulations implementing the Conservation Act also constitute reimbursable state mandates. The Commission consolidated the test claims. After consolidating the test claims, the Commission determined Richvale and Biggs did not have standing to bring the second test claim. The Commission reasoned Richvale and Biggs are not "subject to the tax and spend limitations of articles XIII A and B of the California Constitution"[1] because they are funded solely from service charges, fees, and assessments. Thereafter Oakdale Irrigation District and Glenn-Colusa Irrigation District substituted in as claimants for the second test claim.

### *The Commission's Decision*

In December 2014, the Commission denied the consolidated test claims "on the grounds that most of the code sections and regulations pled do not impose new mandated activities, and all affected claimants have sufficient fee authority as a matter of law to cover the costs of any new requirements." The decision states that "[t]he Commission finds that the Water Conservation Act of 2009 . . . , and the Agricultural Water Measurement regulations promulgated by the Department of Water Resources . . . to

---

[1]     Undesignated citations to articles are to the California Constitution.

5

implement the Act, impose some new required activities on urban water suppliers and agricultural water suppliers, including measurement requirements, conservation and efficient water management requirements, notice and hearing requirements, and documentation requirements, with specified exceptions and limitations. [¶] However, the Commission finds that several agricultural water suppliers are either exempted from the requirements of the test claim statutes and regulations or are subject to alternative and less expensive compliance alternatives because the activities were already required by a regime of federal statutes and regulations, which apply to most agricultural water suppliers within the state."

The Commission's decision concludes that, "to the extent that the test claim statute and regulations impose any new state-mandated activities, they do not impose costs mandated by the state because the Commission finds that urban water suppliers and agricultural water suppliers possess fee authority, sufficient as a matter of law to cover the costs of any new required activities. Therefore, the test claim statute and regulations do not impose costs mandated by the state pursuant to Government Code section 17556(d), and are not reimbursable under article XIII B, section 6 of the California Constitution." The Commission rejected the Water Districts' arguments that after the enactment of Proposition 218 "they are now 'authorized to do no more than *propose* a fee increase that can be rejected' by majority protest." (Fns. omitted.) The Commission reasoned that "[i]n order for the Commission to make findings that the claimants' fee authority has been diminished, or negated, pursuant to article XIII D, section 6(a), the claimants would have to provide evidence that they tried and failed to impose or increase the necessary fees, or provide evidence that a court determined that Proposition 218 represents a constitutional hurdle to fee authority as a matter of law." The Commission determined it could not make either finding.

6

As to the second test claim, the Commission determined these water districts "are not subject to the taxing and spending limitations of articles XIII A and XIII B, and are therefore not eligible for reimbursement under article XIII B, section 6 of the California Constitution."

### *Trial Court Proceedings*

In February 2015, the Water Districts filed a petition for writ of administrative mandate under Code of Civil Procedure section 1094.5 to challenge the Commission's denial of their test claims. The trial court heard the matter and denied the Water Districts' writ petition.

The trial court's decision noted that "[w]hile the court agrees with [the Water Districts] that the Commission abused its discretion in dismissing the test claims of Richvale and Biggs-West, the court shall deny the petition because [the Water Districts] have failed to show how they incurred reimbursable state-mandated costs." Noting the Water Districts admitted "that, but for Proposition 218, they would have sufficient authority to establish or increase fees or charges to recover the costs of any new mandates," the trial court determined it was "unwilling to conclude that [the Water Districts] lack 'sufficient' fee authority based on the speculative and uncertain threat of a majority protest. Thus, in the absence of a showing that [the Water Districts] have 'tried and failed' to impose or increase the necessary fees, the Commission properly concluded that [the Water Districts] have sufficient fee authority to cover the costs of any mandated programs." Continuing with this reasoning, the trial court stated that "[l]ogically, then the limitations period for filing a test claim cannot begin to run until after the agency has 'tried and failed' to recover the costs through fees or charges subject to a majority protest requirement."

7

The trial court also concluded the Commission abused its discretion in determining Richvale and Biggs are ineligible for subvention because they do not receive ad valorem property tax revenue. However, the trial court declined to make a determination of these districts' entitlement to reimbursement for lack of an adequate record. In the trial court's view, "[d]etermining whether Richvale and Biggs-West receive 'proceeds of taxes' will require a comprehensive account of the revenues received by them, and a subsequent determination as to whether those revenues constitute 'taxes' within the meaning of Article XIII B. No simple feat." Nonetheless, the trial court determined the ability of Richvale and Biggs to levy fees supported the conclusion they are not eligible for subvention for their test claims.

DISCUSSION

## I

### *Standard of Review*

As the California Supreme Court has explained, "Courts review a decision of the Commission to determine whether it is supported by substantial evidence. (Gov. Code, § 17559.) Ordinarily, when the scope of review in the trial court is whether the administrative decision is supported by substantial evidence, the scope of review on appeal is the same. (*County of Los Angeles v. Commission on State Mandates* (1995) 32 Cal.App.4th 805, 814 (*County of Los Angeles*).) However, the appellate court independently reviews conclusions as to the meaning and effect of constitutional and statutory provisions. (*City of San Jose v. State of California* (1996) 45 Cal.App.4th 1802, 1810.)" (*Department of Finance v. Commission on State Mandates* (2016) 1 Cal.5th 749, 762.)

Even while exercising independent review of statutes and constitutional provisions, we recognize that "[w]here the meaning and legal effect of a statute is the

8

issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth. (See *Traverso v. People ex rel. Dept. of Transportation* (1996) 46 Cal.App.4th 1197, 1206.) Considered alone and apart from the context and circumstances that produce them, agency interpretations are not binding or necessarily even authoritative. To quote the statement of the Law Revision Commission . . . , 'The standard for judicial review of agency interpretation of law is the *independent judgment* of the court, giving *deference* to the determination of the agency *appropriate* to the circumstances of the agency action.' (Judicial Review of Agency Action (Feb.1997) 27 Cal. Law Revision Com. Rep. (1997) p. 81, italics added.)" (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8.)

## II

### *Subvention and the Authority to Levy Fees*

The Water Districts contend they no longer have authority to impose fees to pay for state-mandated water upgrades because Proposition 218 provides that any new fees may be defeated by a majority protest by their water customers. We are not persuaded.

### A.

### *Subvention*

The voters' passage of Proposition 4 in 1979 added a subvention requirement to article XIII B in addition to restricting the amount of taxes state and local governments may appropriate and spend each year.[2] Specifically, article XIII B "requires state

---

[2]    Proposition 4 was approved by voters in the Special Election, November 6, 1979, effective November 7, 1979 (<https://ballotpedia.org/California_Proposition_4,_the_%22Gann_Limit%22_Initiative_

9

reimbursement of resulting local costs whenever, after January 1, 1975, 'the Legislature or any state agency mandates a new program or higher level of service on any local government . . . .' ([Cal. Const., art. XIII B,] § 6.) Such mandatory state subventions are excluded from the local agency's spending limit, but included within the state's. ([*Id*.,] § 8, subds. (a), (b).)" (*City of Sacramento v. State of California* (1990) 50 Cal.3d 51, 59 (*City of Sacramento*).)

To implement the constitutional subvention requirement, the Legislature enacted Government Code section 17551 (Stats. 1984, ch. 1459, § 1, pp. 5113-5119) that provides for the Commission to "hear and decide upon a claim by a local agency or school district that the local agency or school district is entitled to be reimbursed by the state for costs mandated by the state as required by Section 6 of Article XIII B of the California Constitution." (Gov. Code, § 17551, subd. (a).) The Commission is a quasi-judicial body. (Gov. Code, § 17500.) As this court has previously noted, "all questions concerning state-mandated costs are to be presented to the Commission in the first instance. (Gov. Code, § 17500 et seq.) This is the exclusive means for pursuing such claims. (Gov. Code, § 17552.)" (*Central Delta Water Agency v. State Water Resources Control Bd.* (1993) 17 Cal.App.4th 621, 640.)

Government Code section 17514 states that " '[c]osts mandated by the state' means any increased costs which a local agency or school district is required to incur after July 1, 1980, as a result of any statute . . . , or any executive order implementing any statute . . . , which mandates a new program or higher level of service of an existing program within the meaning of Section 6 of Article XIII B of the California Constitution." However, section 17556 provides that "[t]he [Commission] shall not find

_____

(1979)> [as of Sept. 27, 2018], archived at <https://perma.cc/GW7H-LSGX>) (Proposition 4).

costs mandated by the state, as defined in Section 17514, in any claim submitted by a local agency or school district, if, after a hearing, the commission finds any one of the following: [¶] . . . [¶] (d) The local agency or school district has the authority to levy service charges, fees, or assessments sufficient to pay for the mandated program or increased level of service. This subdivision applies regardless of whether the authority to levy charges, fees, or assessments was enacted or adopted prior to or after the date on which the statute or executive order was enacted or issued."

In the event the local agency believes it is entitled to subvention for a new unfunded state mandate, "[t]he local agency must file a test claim with the Commission, which, after a public hearing, decides whether the statute mandates a new program or increased level of service. (Gov. Code, §§ 17521, 17551, 17555.) . . . If the Commission finds no reimbursable mandate, the local agency may challenge this finding by administrative mandate proceedings under section 1094.5 of the Code of Civil Procedure. (Gov. Code, § 17559.) Government Code section 17552 declares that these provisions 'provide the sole and exclusive procedure by which a local agency . . . may claim reimbursement for costs mandated by the state as required by Section 6 . . . .' " (*County of San Diego v. State of California* (1997) 15 Cal.4th 68, 81-82.)

## A.

### *Connell v. Superior Court*

*Connell* involved a test claim brought by Santa Margarita to seek subvention for a statewide regulation requiring the water districts to increase water purity for reclaimed wastewater when used for certain types of irrigation. (*Connell, supra*, 59 Cal.App.4th at p. 385.) The state Board of Control (now Commission on State Mandates) found the regulation constituted a reimbursable state mandate. (*Id.* at p. 387.) The trial court affirmed the Board's decision, from which the State Controller and State Treasurer

11

appealed. (*Id.* at pp. 385-386.) The State Controller and State Treasurer argued Santa Margarita had legal authority to levy fees to pay for the increased water quality costs and therefore was not entitled to subvention. Relying on a statutory provision now contained in Government Code section 17556, this court agreed. (*Connell,* at pp. 386, 397-398.) Then, as now, Government Code section 17556, has provided in pertinent part that the Commission "shall not find costs mandated by the state . . . in any claim submitted by a local agency or school district, if, after a hearing, the [Commission] finds that: [¶] . . . [¶] (d) The local agency or school district has the authority to levy service charges, fees, or assessments sufficient to pay for the mandated program or increased level of service." (Compare *Connell,* at p. 398, fn. 16, with Gov. Code, § 17556.)

*Connell* noted the California Supreme Court has held that Article XIII B, section 6, "requires subvention only when the costs in question can be recovered solely from tax revenues. ([*County of Fresno v. State of California* (1991) 53 Cal.3d 482,] 487.) Government Code section 17556, subdivision (d), 'effectively construes the term "costs" in the constitutional provision as excluding expenses that are recoverable *from sources other than taxes*. Such a construction is altogether sound.' " (*Connell*, *supra*, 59 Cal.App.4th at p. 398, quoting *County of Fresno*, at p. 487, italics added.) Thus, *Connell* examined whether the Santa Margarita Water District had authority to pay for the increase in water quality from sources other than taxes.

This court, in *Connell*, held Water Code section 35470 provided Santa Margarita with authority to levy fees to cover the costs of increased water quality as mandated by the state regulation. (59 Cal.App.4th at p. 398.) As *Connell* recounts, former Water Code section 35470 (Stats. 1976, ch. 1044, § 1, p. 4664) then provided that "[a]ny district formed on or after July 30, 1917, may, in lieu in whole or in part of raising money for district purposes by assessment, make water available to the holders of title to land or the

12

occupants thereon, and may fix and collect charges therefor.  The charges may include standby charges to holders of title to land to which water may be made available, whether the water is actually used or not.  The charges may vary in different months and in different localities of the district to correspond to the cost and value of the service, and the district may use so much of the proceeds of the charges as may be necessary to defray the ordinary operation or maintenance expenses of the district and for any other lawful district purpose."[3]  (*Connell*, *supra*, 59 Cal.App.4th at p. 398.)  Based on this statutory authority to levy fees, *Connell* held the water districts "have authority, i.e., the right or power, to levy fees sufficient to cover the costs."  (*Id.* at p. 401.)

In so holding, *Connell* rejected the Santa Margaritas' invitation "to construe 'authority,' as used in the statute, as a practical ability in light of surrounding economic circumstances."  (*Connell*, *supra*, 59 Cal.App.4th at p. 401.)  Santa Margarita argued the new regulations would make reclaimed water unmarketable – with the result that users would switch to potable water.  (*Id.* at pp. 401-402.)  This court held the economic

---

**3**     Water Code section 35470 currently provides:  "Any district formed on or after July 30, 1917, may, in lieu in whole or in part of raising money for district purposes by assessment, make water available to the holders of title to land or the occupants thereon, and may fix and collect charges therefor. *Pursuant to the notice, protest, and hearing procedures in Section 53753 of the Government Code*, the charges may include standby charges to holders of title to land to which water may be made available, whether the water is actually used or not.  The charges may vary in different months and in different localities of the district to correspond to the cost and value of the service, and the district may use so much of the proceeds of the charges as may be necessary to defray the ordinary operation or maintenance expenses of the district and for any other lawful district purpose."  (Stats. 2007, ch. 27, § 29, p. 116, italics added.)  The italicized portion of Water Code section 35470 was added to comport with the protest provision adopted with Proposition 218.  (Legis. Counsel's Dig., Sen. Bill No. 444, Stats. 2007 (2007-2008 Reg. Sess.) Summary Dig., pp. 96-97 <http://www.leginfo.ca.gov/pub/07-08/bill/sen/sb_0401-0450/sb_444_bill_20070702_chaptered.pdf> [as of Sept. 27, 2018], archived at <https://perma.cc/Q2PS-B32X>.)

13

practicability argument "was irrelevant and injected improper factual questions into the inquiry" that "presented a question of law." (*Id.* at pp. 401, 402.)

Finally, this court noted but did not decide on a passing comment by Santa Margarita that, under Proposition 218, " 'the authority of local agencies to recover costs for many services [is] impacted by the requirement to secure the approval by majority vote of the property owners voting, to levy or to increase property related fees.' " (*Connell*, *supra*, 59 Cal.App.4th at p. 403.) This case takes up where *Connell* left off, namely with the question of whether the passage of Proposition 218 undermined water districts' authority to levy fees so that they are entitled to subvention for state-mandated regulations requiring water infrastructure upgrades. The Water Districts do not argue this court wrongly decided *Connell, supra,* 59 Cal.App.4th 382, but only that the rule of decision was superseded by Proposition 218. Consequently, we proceed to examine the effect of Proposition 218 on the continuing applicability of *Connell.*

## B.

### *Proposition 218*

To determine whether and how Proposition 218 affects the entitlement of the Water Districts to subvention of the costs of state-mandated water upgrades, we survey the context within which Proposition 218 was passed by California voters. "Proposition 218 can best be understood against its historical background, which begins in 1978 with the adoption of Proposition 13. 'The purpose of Proposition 13 was to cut local property taxes. [Citation.]' (*County of Los Angeles v. Sasaki* (1994) 23 Cal.App.4th 1442, 1451.) Its principal provisions limited ad valorem property taxes to one percent of a property's assessed valuation and limited increases in the assessed valuation to two percent per year unless and until the property changed hands. (Cal. Const., art. XIII A, §§ 1, 2.) [¶] To prevent local governments from subverting its limitations, Proposition 13 also prohibited

14

counties, cities, and special districts from enacting any special tax without a two-thirds vote of the electorate. (Cal. Const., art. XIII A, § 4; *Rider v. County of San Diego* (1991) 1 Cal.4th 1, 6-7.) It has been held, however, that a special assessment is not a special tax within the meaning of Proposition 13. (*Knox v. City of Orland* (1992) 4 Cal.4th 132, 141, and cases cited.) Accordingly, a special assessment could be imposed without a two-thirds vote." (*Howard Jarvis Taxpayers Ass'n. v. City of Riverside* (1999) 73 Cal.App.4th 679, 681-683 (*Howard Jarvis Taxpayers Ass'n.*).)

"In November 1979, the voters adopted Proposition 4, adding article XIII B to the state Constitution. Article XIII B—the so-called 'Gann limit'—restricts the amounts state and local governments may appropriate and spend each year from the 'proceeds of taxes.' (Art. XIII B,] §§ 1, 3, 8, subds. (a)–(c).)" (*City of Sacramento, supra,* 50 Cal.3d at pp. 58-59.) The Supreme Court in *City of Sacramento* noted that "Articles XIII A and XIII B work in tandem, together restricting California governments' power both to levy and to spend for public purposes." (*Id.* at p. 59, fn. 1.)

The Gann Limit applies to *taxes* rather than *fees*. "Article XIII B of the Constitution was intended to apply to taxation—specifically, to provide 'permanent protection for taxpayers from excessive taxation' and 'a reasonable way to provide discipline in tax spending at state and local levels.' (See *County of Placer v. Corin* (1980) 113 Cal.App.3d 443, 446, quoting and following Ballot Pamp., Proposed Stats. and Amends. to Cal. Const. with arguments to voters, Special Statewide Elec. (Nov. 6, 1979), argument in favor of Prop. 4, p. 18.) To this end, it establishes an 'appropriations limit' for both state and local governments (Cal. Const., art. XIII B, § 8, subd. (h)) and allows no 'appropriations subject to limitation' in excess thereof (*id*., § 2). (See *County of Placer v. Corin, supra*, 113 Cal.App.3d at p. 446.) It defines the relevant 'appropriations subject to limitation' as 'any authorization to expend during a fiscal year

the proceeds of taxes. . . .' (Cal. Const., art. XIII B, § 8, subd. (b).) It defines 'proceeds of taxes' as including 'all tax revenues and the proceeds to . . . government from,' inter alia, 'regulatory licenses, user charges, and user fees *to the extent that such proceeds exceed the costs reasonably borne by* [*government*] *in providing the regulation, product, or service . . . .*' (Cal. Const., art. XIII B, § 8, subd. (c), emphasis added.) Such 'excess' proceeds from 'licenses,' 'charges,' and 'fees' 'are but taxes' for purposes here. (*County of Placer v. Corin, supra*, 113 Cal.App.3d at p. 451, italics in original.) [¶] Article XIII B of the Constitution, however, was not intended to reach beyond taxation." (*County of Fresno v. State of California* (1991) 53 Cal.3d 482, 486-487.)

The Gann Limit does not require voter approval for imposition of special assessments. (*Howard Jarvis Taxpayers Ass'n., supra,* 73 Cal.App.4th at p. 682.) The court in *Howard Jarvis Taxpayers Ass'n.* recounted that, "[i]n November 1996, in part to change this rule, the electorate adopted Proposition 218, which added Articles XIII C and XIII D to the California Constitution. Proposition 218 allows only four types of local property taxes: (1) an ad valorem property tax; (2) a special tax; (3) an assessment; and (4) a fee or charge. (Cal. Const., art. XIII D, § 3, subds. (a)(1)-(a)(4); see also Cal. Const., art. XIII D, § 2, subd. (a).) It buttresses Proposition 13's limitations on ad valorem property taxes and special taxes by placing analogous restrictions on assessments, fees, and charges. [¶] First, Proposition 218 defines an 'assessment' as 'any levy or charge upon real property . . . for a special benefit conferred upon the real property.' (Cal. Const., art. XIII D, § 2, subd. (b).) It defines a 'special benefit' as 'a particular and distinct benefit over and above general benefits conferred on real property located in the district or to the public at large. General enhancement of property value does not constitute 'special benefit.' (Cal. Const., art. XIII D, § 2, subd. (i).) Proposition 218 then provides that an assessment may be imposed only if (1) it is supported by an

engineer's report (Cal. Const., art. XIII D, § 4, subd. (b)), (2) it does not exceed the reasonable cost of the proportionate special benefit conferred on each affected parcel (Cal. Const., art. XIII D, § 4, subds. (a), (f)), and (3) it receives, by mailed ballot, a vote of at least half of the owners of affected parcels, weighted 'according to the proportional financial obligation of the affected property.' (Cal. Const., art. XIII D, § 4, subds. (c)-(e)). [¶] . . . Four specified classes of preexisting assessments, however, are 'exempt from the procedures and approval process set forth in Section 4.' (Cal. Const., art. XIII D, § 5.) . . . Under article XIII D, section 5, subdivision (a) of the California Constitution (section 5(a)), a preexisting special assessment is exempt if it is 'imposed exclusively to finance the capital costs or maintenance and operation expenses for sidewalks, streets, sewers, *water*, flood control, drainage systems or vector control.' " (*Howard Jarvis Taxpayers Ass'n., supra*, at pp. 682-683, italics changed.)

## C.

### *The Water Districts' Authority to Levy Fees*

Water Code section 35470 provides that the water districts in this case "may, in lieu in whole or in part of raising money for district purposes by assessment, make water available to the holders of title to land or the occupants thereon, *and may fix and collect charges therefor*." (Italics added.) This portion of Water Code section 35470 remains unchanged since this court's decision in *Connell, supra*, 59 Cal.App.4th at p. 398. The Water Districts in this case do not dispute the quoted portion of Water Code section 35470 provides them with statutory authority to levy fees for the costs necessary to comply with conservation goals imposed by the Conservation Act. Instead, the Water Districts argue Proposition 218's majority protest procedure so undermines their statutory authority to levy fees that the water conservation goals constitute an unfunded statutory mandate. We disagree.

17

Water Code section 35470 expressly reflects the Legislature's determination that water districts may levy fees that "include standby charges to holders of title to land to which water may be made available, whether the water is actually used or not" so long as the fees are levied "[p]ursuant to the notice, protest, and hearing procedures in Section 53753 of the Government Code." As a consequence, the Water Districts have statutory authority and a statutory procedure by which to levy fees for implementing conservation goals mandated by the Conservation Act.[4]

The authority of the Water Districts to levy fees means the costs of complying with the Conservation Act are not subject to subvention because the costs are "recoverable from sources other than taxes" within the meaning of article XIII B. (*County of Fresno, supra*, 53 Cal.3d at p. 487.) As the California Supreme Court has held, "Article XIII B of the Constitution . . . was not intended to reach beyond taxation." (*Ibid.*) In short, Proposition 218 did not undermine the authority of water districts to levy fees to cover costs of maintaining water infrastructure. This conclusion is confirmed by statute. Government Code section 17556, subdivision (d), provides that subvention is not available if the local agency "has the authority to levy service charges, fees, or assessments sufficient to pay for the mandated program or increased level of service."

---

[4] Because the Commission's decision on the test claims is based on its conclusion the Water Districts had sufficient authority to meet goals imposed by the Conservation Act, the Commission asserts it did not determine the extent to which the water conservation goals constitute unfunded state mandates. However, the Water Districts assert the Commission did find the Conservation Act to impose unfunded state mandates. Because we affirm the Commission's decision on grounds the Water Districts have sufficient authority to levy fees for water services, we do not need to reach the issue of whether the Conservation Act mandates water districts to incur any costs that would be subject to subvention if the Water Districts lacked legal authority to levy fees.

18

Proposition 218's majority protest procedure does not divest the Water Districts of their authority to levy fees by allowing property owners to protest new fees. (Art. XIII D, § 6, subd. (a) & (c).) Article XIII D, section 6, requires a local agency to identify parcels to be subject to the new fee, calculate the fee amount, and provide notice to affected property owners of the proposed fee. (*Id*., § 6, subd. (a)(1).) The local agency shall conduct a public hearing and consider all written protests filed by the affected property owners. (*Id.*, § 6, subd. (a)(2).) If a majority of the property owners present written protests against the fee, the fee may not be imposed. (*Ibid*.) Government Code section 53753 implements the notice, protest, and hearing requirements of Article XIII D that were enacted by Proposition 218.[5] (*Golden Hill*

---

[5] The primary requirements of Government Code section 53753 in implementing the majority protest procedure are:

"(b) Prior to levying a new or increased assessment, or an existing assessment that is subject to the procedures and approval process set forth in Section 4 of Article XIII D . . . , an agency shall give notice by mail to the record owner of each identified parcel. Each notice shall include [specified notice language and deadlines for giving notice].

"(c) Each notice . . . shall contain an assessment ballot [with enumerated confidentiality, address, and sealing requirements].

"(d) At the time, date, and place stated in the notice mailed . . . , the agency shall conduct a public hearing upon the proposed assessment. At the public hearing, the agency shall consider all objections or protests, if any, to the proposed assessment. . . . At the public hearing, any person shall be permitted to present written or oral testimony. The public hearing may be continued from time to time.

"(e)(1) At the conclusion of the public hearing conducted pursuant to subdivision (d), an impartial person designated by the agency who does not have a vested interest in the outcome of the proposed assessment shall tabulate the assessment ballots submitted, and not withdrawn, in support of or opposition to the proposed assessment. . . .

[¶] . . . [¶]

19

*Neighborhood Ass'n, Inc. v. City of San Diego* (2011) 199 Cal.App.4th 416, 432 [noting that Government Code section 53753 was " 'designed to clarify the implementation of Proposition 218' "].)

The majority protest procedure for levying fees lies in contrast to the voter-approval requirement imposed by Proposition 218 for new taxes. The voter-approval requirement of Article XIII C, in section 2, subdivision (b), provides that " '[n]o local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote,' and it provides, in subdivision (d), that '[n]o local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote.' " (*Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 211 (*Bighorn*).) This voter-approval requirement, however, does not apply to levying fees for *water* service. Instead, section 6 of Article XIII "expressly exempts water service charges from the voter-approval requirement that it imposes on all other fees and

---

"(3) In the event that more than one of the record owners of an identified parcel submits an assessment ballot, the amount of the proposed assessment to be imposed upon the identified parcel shall be allocated to each ballot submitted in proportion to the respective record ownership interests or, if the ownership interests are not shown on the record, as established to the satisfaction of the agency by documentation provided by those record owners.

"(4) A majority protest exists if the assessment ballots submitted, and not withdrawn, in opposition to the proposed assessment exceed the assessment ballots submitted, and not withdrawn, in its favor, weighting those assessment ballots by the amount of the proposed assessment to be imposed upon the identified parcel for which each assessment ballot was submitted.

"(5) If there is a majority protest against the imposition of a new assessment, or the extension of an existing assessment, or an increase in an existing assessment, the agency shall not impose, extend, or increase the assessment."

20

charges." (*Bighorn* at pp. 218-219.) The *Bighorn* court concluded that, "[a]t least as to fees and charges that are property related, section 6 of California Constitution article XIII D would appear to embody the electorate's intent as to when voter-approval should be required, or not required, before existing fees may be increased or new fees imposed, *and the electorate chose not to impose a voter-approval requirement for increases in water service charges*." (*Id.* at p. 219, italics added.) Based on this guidance, we reject the Water District's contention that Proposition 218 requires consent of the voters to impose any new water service fees.

In *Bighorn, supra,* 39 Cal.4th 205, the California Supreme Court explored the power-sharing relationship between local agencies and the electorate when noting Proposition 218's addition of article XIII C, section 3, to the California Constitution "does not authorize an initiative to impose a requirement of voter preapproval for future rate increases or new charges for water delivery. In other words, by exercising the initiative power voters may decrease a public water agency's fees and charges for water service, but the agency's governing board may then raise other fees or impose new fees without prior voter approval. Although this power-sharing arrangement has the potential for conflict, *we must presume that both sides will act reasonably and in good faith, and that the political process will eventually lead to compromises that are mutually acceptable and both financially and legally sound*. (See *DeVita v. County of Napa* [(1995)] 9 Cal.4th [763,] 792-793 ['We should not presume . . . that the electorate will fail to do the legally proper thing'].) We presume local voters will give appropriate consideration and deference to a governing board's judgments about the rate structure needed to ensure a public water agency's fiscal solvency, and we assume the board, whose members are elected (see Stats. 1969, ch. 1175, § 5, p. 2274, 72B West's Ann. Wat.-Appen. [(1995 ed.] ch. 112, p. 190), will give appropriate

21

consideration and deference to the voters' expressed wishes for affordable water service.  The notice and hearing requirements of subdivision (a) of section 6 of California Constitution article XIII D7 will facilitate communications between a public water agency's board and its customers, and the substantive restrictions on property-related charges in subdivision (b) of the same section should allay customers' concerns that the agency's water delivery charges are excessive."  (*Bighorn*, *supra*, 39 Cal.4th at pp. 220-221, italics added.)

As a constitutionally sound power-sharing arrangement, the protest procedure implemented by Proposition 218 is not properly construed as a deprivation of fee authority as the Water Districts urge.  We disagree with the assumption of the Water Districts and amici that water customers' ability to file written protests by its very nature deprives local agencies of their ability to raise fees for necessary projects.  Consistent with the California Supreme Court's reasoning in *Bighorn,* we presume local voters will give appropriate consideration and deference to state mandated requirements relating to water conservation measures required by statute. (*Bighorn*, *supra*, 39 Cal.4th at p. 220.) Consequently, we reject the Water District's proposition that the existence of the majority protest procedure enacted through Proposition 218 represents the evisceration of water districts' legal authority to levy fees necessary to comport with state water laws. Proposition 218 implemented a power-sharing arrangement that does not constitute a revocation of the Water District's fee authority.  (*Ibid.*)

We also reject the Water Districts' claim that, as a matter of practical reality, the majority protest procedure allows water customers to defeat the Districts' authority to levy fees.  This contention is similar to the argument presented in *Connell* where Santa Margarita asserted the state mandated regulation was not economically practicable. (*Connell*, *supra*, 59 Cal.App.4th at p. 401.)  We adhere to our holding in *Connell* that the

inquiry into fee authority constitutes an issue of law rather than a question of fact. (*Ibid.*)

Fee authority is a matter governed by statute rather than by factual considerations of practicality.

The corollary of our continued adherence to the rule articulated in *Connell, supra,* 54 Cal.App.4th 382 is that fee authority is not controlled by whether the Water Districts have "tried and failed" to levy fees. We decline to adopt the trial court's try-and-fail approach that suggests the Water Districts may become entitled to subvention despite their continuing statutory authority to levy fees upon showing a district's water customers with majority voting power defeated the proposed levy. As noted above, *Bighorn* instructs that we presume voters will give appropriate consideration and deference to proposals of fees by the boards of the Water Districts. (*Bighorn*, *supra*, 39 Cal.4th at pp. 220-221.) Statutory authorization to levy fees – rather than practical considerations – conclusively determines whether the Water Districts are entitled to subvention. Thus, the authority conferred by Water Code section 35470 supports the decision of the Commission to deny the Water Districts' test claims.[6]

---

[6] We do not reach the Gann Limit argument tendered by the Counties and Cities amici because the argument was not raised by the Water Districts. Moreover, the Water Districts did not raise this issue in the trial court. Thus, we have no record to determine whether and to what extent the Water Districts even fund their operations from taxes for which they might be subject to the Gann Limit. Rather than speculate whether the Water Districts might run afoul of the Gann Limit, we leave that question for a case in which the issue is properly presented.

We also decline to address the Special Districts amici argument regarding the exclusion of enterprise special districts from the state mandate reimbursement. Again, this issue has not been raised by the parties and is not necessary to resolve the gravamen of this appeal. " 'Amicus Curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curiae will not be considered.' " (*Lance Camper Mfg. Corp. v. Republic Indemnity Co. of*

The Water Districts rely on the Legislature's recent passage of Senate Bill No. 231 (2017-2018 Reg. Sess.) (SB 231). SB 231 was passed in response to the decision in *Howard Jarvis Taxpayers Ass'n v. City of Salinas* (2002) 98 Cal.App.4th 1351.) *City of Salinas* held storm water drainage fees were a property-related fee requiring voter approval because storm water drains are not "sewers" that are exempt from the voter-approval requirement of article XIII D, section 6, subdivision (c). (*Id.* at p. 1355-1356.) SB 231 amended Government Code section 53750, subdivision (k), to expand the definition of "sewer" to include storm water systems for purposes of Article XIII C and XIII D. (Stats 2017, ch. 536, § 1.)

In this case, none of the parties argue the costs for upgrading water service that may be required by the Conservation Act are subject to voter approval. Such an argument would be untenable because SB 231 added Government Code section 53751, subdivision (h), to declare that "Proposition 218 exempts sewer and water services from the voter-approval requirement." (Stats. 2017, ch. 536, § 2.) Instead, the Water Districts argue the majority protest procedure constitutes the deprivation of their fee levying authority. Consequently, we reject as inapposite the Water Districts' reliance on the Legislature's recent passage of SB 231.

## III

### *Subvention Eligibility for Richvale and Biggs Water Districts*

Our conclusion that Proposition 218 does not undermine the statutory authority of the Water Districts to levy fees to pay for the costs of complying with the Conservation

---

*America* (2001) 90 Cal.App.4th 1151, 1161, fn. 6, quoting *Eggert v. Pacific States S. & L. Co.* (1943) 57 Cal.App.2d 239, 251.)

Finally, we deny the Special Districts amici request for judicial notice of legislative history materials relating to special districts as unnecessary to the determination of the issue presented in this case.

Act, obviates the need to consider whether the Commission erred in dismissing the test claims of Richvale and Biggs on grounds Richvale and Biggs are not eligible for subvention because they do not receive tax revenues. Richvale and Biggs – along with the other Water Districts – have statutory authority to impose or increase water fees under Water Code section 35470 in order to comply with the Conservation Act.

DISPOSITION

The judgment is affirmed. Respondent Commission on State Mandates and real parties Department of Finance and Department of Water Resources shall recover their costs, if any, on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/s/
HOCH, J.

We concur:

/s/
RAYE, P. J.

/s/
BUTZ, J.

25