Filed 3/20/19; Opinion following rehearing

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| PARADISE IRRIGATION DISTRICT et al., | |
| Plaintiffs and Appellants, | C081929 |
| v. | (Super. Ct. No. 34201580002016) |
| COMMISSION ON STATE MANDATES, | OPINION ON REHEARING |
| Defendant and Respondent; | |
| DEPARTMENT OF WATER RESOURCES et al., | |
| Real Parties in Interest and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Timothy M. Frawley, Judge.  Affirmed.

MINASIAN, MEITH, SOARES, SEXTON & COOPER, Dustin C. Cooper, Andrew J. McClure, Peter C. Harman for Paradise Irrigation District, South Feather Water & Power Agency, Richvale Irrigation District and Oakdale Irrigation District; SOMACH SIMMONS & DUNN, Andrew M. Hitchings and Alexis K. Stevens for Biggs-West Gridley Water District and Glenn-Colusa Irrigation District, Plaintiffs and Appellants.

Jennifer B. Henning for California State Association of Counties and The League of California Cities; LOZANO SMITH, Sloan R. Simmons, Anne L. Collins and Nicholas J. Clair for California Special Districts Association, Association of California Water Agencies and California Association of Sanitation Agencies as Amici Curiae on behalf of Plaintiffs and Appellants.

Camille Shelton and Matthew B. Jones for Defendant and Respondent.

Xavier Becerra, Attorney General, Douglas J. Woods, Thomas S. Patterson, Senior Assistant Attorneys General, Marc A. LeForestier, Tamar Pachter, Supervising Deputy Attorneys General and Peter H. Chang, Deputy Attorney General for Real Parties in Interest and Respondents.

This appeal focuses on circumstances in which local water and irrigation districts may be entitled to subvention for unfunded state mandates. "Subvention" refers to claims by local governments and agencies in California for reimbursement from the state for costs of complying with state mandates for which the mandate does not concomitantly provide funds to the local agency. (*Connell v. Superior Court* (1997) 59 Cal.App.4th 382, 395 (*Connell*).) In the event a local agency believes it is entitled to subvention for a new unfunded state mandate, the agency may file a "test claim" with the Commission on State Mandates (Commission). The Commission hears the matter and determines whether the statute or executive order constitutes an unfunded state mandate for which subvention is required.

Here, the Commission denied consolidated test claims for subvention by appellants Paradise Irrigation District (Paradise), South Feather Water & Power Agency (South Feather), Richvale Irrigation District (Richvale), Biggs-West Gridley Water District (Biggs), Oakdale Irrigation District (Oakdale), and Glenn-Colusa Irrigation District (Glenn-Colusa). We refer to appellants collectively as the Water and Irrigation Districts, except when addressing individual appellants' separate claims. The

2

Commission determined the Water and Irrigation Districts have sufficient legal authority to levy fees to pay for any water service improvements mandated by the Water Conservation Act of 2009 (Stats. 2009-2010, 7th Ex. Sess., ch. 4, § 1 (Conservation Act)). The trial court agreed and denied a petition for writ of mandate brought by the Water and Irrigation Districts.

On appeal, the Water and Irrigation Districts present a question left open by this court's decision in *Connell, supra,* 59 Cal.App.4th 832. *Connell* addressed the statutory interpretation of Revenue and Taxation Code section 2253.2 (Stats. 1982, ch. 734, § 10, pp. 2916-2917) that has been recodified in pertinent part without substantive change in Government Code section 17556 (added by Stats. 1984, ch. 1459, § 1, pp. 5113-5119). (*Connell*, at pp. 397-398 & fn. 16.) Based on the statutory language, *Connell* held local water districts are precluded from subvention for state mandates to increase water purity levels insofar as the water districts have legal authority to recover the costs of the state-mandated program. (*Id.* at p. 401.) In so holding, *Connell* rejected an argument by the Santa Margarita Water District and three other water districts (collectively Santa Margarita) that they did not have the "practical ability in light of surrounding economic circumstances." (*Id.* at p. 401.) This court reasoned that crediting Santa Margarita's argument "would create a vague standard not capable of reasonable adjudication. Had the Legislature wanted to adopt the position advanced by [Santa Margarita], it would have used 'reasonable ability' in the statute rather than 'authority.' " (*Ibid.*)

In *Connell, supra,* 59 Cal.App.4th 832, this court declined to consider a passing comment by Santa Margarita that the then-recent passage of Proposition 218 (as approved by voters Gen. Elec. Nov. 5, 1996, eff. Nov. 6, 1996 <https://elections.cdn.sos.ca.gov/sov/1996-general/official-declaration.pdf> [as of

3

March 19, 2019], archived at <https://perma.cc/F23E-P2KA>) (Proposition 218) meant that "the authority of local agencies to recover costs for many services [is] impacted by the requirement to secure the approval by majority vote of the property owners voting, to levy or to increase property related fees." (*Connell*, at p. 403.) This appeal addresses that issue by considering whether the passage of Proposition 218 changed the authority of water and irrigation districts to recover costs from their ratepayers so that unfunded state mandates for water service must now be reimbursed by the state.

The Water and Irrigation Districts argue Proposition 218 removed their prerogative to impose fees because any new fees may be defeated by a majority of their water customers filing written protests. They also challenge the Commission's ruling it lacked jurisdiction to consider reimbursement claims by Richvale and Biggs because those two districts have not shown they collect any taxes. In support of the Water and Irrigation Districts' position, we have received and considered two amicus curiae briefs: one from the California State Association of Counties and League of California Cities (collectively the Counties and Cities), and one from the California Special Districts Association, Association of California Water Agencies, and California Association of Sanitation Agencies (collectively the Special Districts). We also have received briefing from real parties in interest, the Department of Finance and Department of Water Resources.

We affirm. The Water and Irrigation Districts possess statutory authority to collect fees necessary to comply with the Water Conservation Act. Thus, under Government Code section 17556, subdivision (d), subvention is not available to the Water and Irrigation Districts. The Commission properly denied the reimbursement claims at issue in this case because the Water and Irrigation Districts continue to have legal authority to levy fees even if subject to majority protest of water and irrigation

4

district customers. Under the guidance of the California Supreme Court's decision in *Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 211 (*Bighorn*), we conclude that majority protest procedures are properly construed as a power-sharing arrangement between the districts and their customers, rather than a deprivation of fee authority.

BACKGROUND

### *The Water and Irrigation Districts' Test Claims*

In 2011, the Water and Irrigation Districts filed a joint test claim with the Commission. The Water and Irrigation Districts asserted the Conservation Act "imposes unfunded state mandates to conserve water and achieve water conservation goals on local public agencies that are 'urban retail water suppliers' and/or 'agricultural water suppliers.'" In 2013, Richvale and Biggs filed a second test claim asserting various regulations implementing the Conservation Act also constitute reimbursable state mandates. The Commission consolidated the test claims. After consolidating the test claims, the Commission determined Richvale and Biggs did not have standing to bring the second test claim. The Commission reasoned Richvale and Biggs are not "subject to the tax and spend limitations of articles XIII A and B of the California Constitution"[1] because they are funded solely from service charges, fees, and assessments. Thereafter Oakdale Irrigation District and Glenn-Colusa Irrigation District substituted in as claimants for the second test claim.

### *The Commission's Decision*

In December 2014, the Commission denied the consolidated test claims "on the grounds that most of the code sections and regulations pled do not impose new mandated

---

[1]     Undesignated citations to articles are to the California Constitution.

5

activities, and all affected claimants have sufficient fee authority as a matter of law to cover the costs of any new requirements."  The decision states that "[t]he Commission finds that the Water Conservation Act of 2009 . . . , and the Agricultural Water Measurement regulations promulgated by the Department of Water Resources . . . to implement the Act, impose some new required activities on urban water suppliers and agricultural water suppliers, including measurement requirements, conservation and efficient water management requirements, notice and hearing requirements, and documentation requirements, with specified exceptions and limitations.  [¶]  However, the Commission finds that several agricultural water suppliers are either exempted from the requirements of the test claim statutes and regulations or are subject to alternative and less expensive compliance alternatives because the activities were already required by a regime of federal statutes and regulations, which apply to most agricultural water suppliers within the state."

The Commission's decision concludes that, "to the extent that the test claim statute and regulations impose any new state-mandated activities, they do not impose costs mandated by the state because the Commission finds that urban water suppliers and agricultural water suppliers possess fee authority, sufficient as a matter of law to cover the costs of any new required activities.  Therefore, the test claim statute and regulations do not impose costs mandated by the state pursuant to Government Code section 17556(d), and are not reimbursable under article XIII B, section 6 of the California Constitution."  The Commission rejected the Water and Irrigation Districts' arguments that after the enactment of Proposition 218 "they are now 'authorized to do no more than *propose* a fee increase that can be rejected' by majority protest."  (Fns. omitted.)  The Commission reasoned that "[i]n order for the Commission to make findings that the claimants' fee authority has been diminished, or negated, pursuant to article XIII D,

6

section 6(a), the claimants would have to provide evidence that they tried and failed to impose or increase the necessary fees, or provide evidence that a court determined that Proposition 218 represents a constitutional hurdle to fee authority as a matter of law." The Commission determined it could not make either finding.

As to the second test claim, the Commission determined these water and irrigation districts "are not subject to the taxing and spending limitations of articles XIII A and XIII B, and are therefore not eligible for reimbursement under article XIII B, section 6 of the California Constitution."

### *Trial Court Proceedings*

In February 2015, the Water and Irrigation Districts filed a petition for writ of administrative mandate under Code of Civil Procedure section 1094.5 to challenge the Commission's denial of their test claims. The trial court heard the matter and denied the Water and Irrigation Districts' writ petition.

The trial court's decision noted that "[w]hile the court agrees with [the Water and Irrigation Districts] that the Commission abused its discretion in dismissing the test claims of Richvale and Biggs-West, the court shall deny the petition because [the Water and Irrigation Districts] have failed to show how they incurred reimbursable state-mandated costs." Noting the Water and Irrigation Districts admitted "that, but for Proposition 218, they would have sufficient authority to establish or increase fees or charges to recover the costs of any new mandates," the trial court determined it was "unwilling to conclude that [the Water and Irrigation Districts] lack 'sufficient' fee authority based on the speculative and uncertain threat of a majority protest. Thus, in the absence of a showing that [the Water and Irrigation Districts] have 'tried and failed' to impose or increase the necessary fees, the Commission properly concluded that [the Water and Irrigation Districts] have sufficient fee authority to cover the costs of any

7

mandated programs." Continuing with this reasoning, the trial court stated that "[l]ogically, then the limitations period for filing a test claim cannot begin to run until after the agency has 'tried and failed' to recover the costs through fees or charges subject to a majority protest requirement."

The trial court also concluded the Commission abused its discretion in determining Richvale and Biggs are ineligible for subvention because they do not receive ad valorem property tax revenue. However, the trial court declined to make a determination of these districts' entitlement to reimbursement for lack of an adequate record. In the trial court's view, "[d]etermining whether Richvale and Biggs-West receive 'proceeds of taxes' will require a comprehensive account of the revenues received by them, and a subsequent determination as to whether those revenues constitute 'taxes' within the meaning of Article XIII B. No simple feat." Nonetheless, the trial court determined the ability of Richvale and Biggs to levy fees supported the conclusion they are not eligible for subvention for their test claims.

## DISCUSSION

## I

### *Standard of Review*

As the California Supreme Court has explained, "Courts review a decision of the Commission to determine whether it is supported by substantial evidence. (Gov. Code, § 17559.) Ordinarily, when the scope of review in the trial court is whether the administrative decision is supported by substantial evidence, the scope of review on appeal is the same. (*County of Los Angeles v. Commission on State Mandates* (1995) 32 Cal.App.4th 805, 814 (*County of Los Angeles*).) However, the appellate court independently reviews conclusions as to the meaning and effect of constitutional and statutory provisions. (*City of San Jose v. State of California* (1996) 45 Cal.App.4th 1802,

8

1810.)" (*Department of Finance v. Commission on State Mandates* (2016) 1 Cal.5th 749, 762.)

Even while exercising independent review of statutes and constitutional provisions, we recognize that "[w]here the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth. (See *Traverso v. People ex rel. Dept. of Transportation* (1996) 46 Cal.App.4th 1197, 1206.) Considered alone and apart from the context and circumstances that produce them, agency interpretations are not binding or necessarily even authoritative. To quote the statement of the Law Revision Commission . . . , 'The standard for judicial review of agency interpretation of law is the *independent judgment* of the court, giving *deference* to the determination of the agency *appropriate* to the circumstances of the agency action.' (Judicial Review of Agency Action (Feb.1997) 27 Cal. Law Revision Com. Rep. (1997) p. 81, italics added.)" (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8.)

## II

### *Subvention and the Authority to Levy Fees*

The Water and Irrigation Districts contend they no longer have authority to impose fees to pay for state-mandated water upgrades because Proposition 218 provides that any new fees may be defeated by a majority protest by their water customers. We are not persuaded.

### A.

### *Subvention*

The voters' passage of Proposition 4 in 1979 added a subvention requirement to article XIII B in addition to restricting the amount of taxes state and local governments

may appropriate and spend each year.[2]  Specifically, article XIII B "requires state reimbursement of resulting local costs whenever, after January 1, 1975, 'the Legislature or any state agency mandates a new program or higher level of service on any local government . . . .'  ([Cal. Const., art. XIII B,] § 6.)  Such mandatory state subventions are excluded from the local agency's spending limit, but included within the state's.  ([*Id*.,] § 8, subds. (a), (b).)"  (*City of Sacramento v. State of California* (1990) 50 Cal.3d 51, 59 (*City of Sacramento*).)

To implement the constitutional subvention requirement, the Legislature enacted Government Code section 17551 (Stats. 1984, ch. 1459, § 1, pp. 5113-5119) that provides for the Commission to "hear and decide upon a claim by a local agency or school district that the local agency or school district is entitled to be reimbursed by the state for costs mandated by the state as required by Section 6 of Article XIII B of the California Constitution."  (Gov. Code, § 17551, subd. (a).)  The Commission is a quasi-judicial body.  (Gov. Code, § 17500.)  As this court has previously noted, "all questions concerning state-mandated costs are to be presented to the Commission in the first instance.  (Gov. Code, § 17500 et seq.)  This is the exclusive means for pursuing such claims.  (Gov. Code, § 17552.)"  (*Central Delta Water Agency v. State Water Resources Control Bd.* (1993) 17 Cal.App.4th 621, 640.)

Government Code section 17514 states that " '[c]osts mandated by the state' means any increased costs which a local agency or school district is required to incur after July 1, 1980, as a result of any statute . . . , or any executive order implementing any

---

**2**  Proposition 4 was approved by voters in the Special Election, November 6, 1979, effective November 7, 1979 (<https://ballotpedia.org/California_Proposition_4,_the_%22Gann_Limit%22_Initiative_(1979)> [as of March 19, 2019], archived at <https://perma.cc/L9EF-Z3CF>) (Proposition 4).

statute . . . , which mandates a new program or higher level of service of an existing program within the meaning of Section 6 of Article XIII B of the California Constitution." However, section 17556 provides that "[t]he [Commission] shall not find costs mandated by the state, as defined in Section 17514, in any claim submitted by a local agency or school district, if, after a hearing, the commission finds any one of the following: [¶] . . . [¶] (d) The local agency or school district has the authority to levy service charges, fees, or assessments sufficient to pay for the mandated program or increased level of service. This subdivision applies regardless of whether the authority to levy charges, fees, or assessments was enacted or adopted prior to or after the date on which the statute or executive order was enacted or issued."

In the event the local agency believes it is entitled to subvention for a new unfunded state mandate, "[t]he local agency must file a test claim with the Commission, which, after a public hearing, decides whether the statute mandates a new program or increased level of service. (Gov. Code, §§ 17521, 17551, 17555.) . . . If the Commission finds no reimbursable mandate, the local agency may challenge this finding by administrative mandate proceedings under section 1094.5 of the Code of Civil Procedure. (Gov. Code, § 17559.) Government Code section 17552 declares that these provisions 'provide the sole and exclusive procedure by which a local agency . . . may claim reimbursement for costs mandated by the state as required by Section 6 . . . .' " (*County of San Diego v. State of California* (1997) 15 Cal.4th 68, 81-82.)

**B.**

### *Connell v. Superior Court*

*Connell* involved a test claim brought by Santa Margarita to seek subvention for a statewide regulation requiring the water districts to increase water purity for reclaimed wastewater when used for certain types of irrigation. (*Connell, supra*, 59 Cal.App.4th at

11

p. 385.)  The state Board of Control (now Commission on State Mandates) found the regulation constituted a reimbursable state mandate.  (*Id.* at p. 387.)  The trial court affirmed the Board's decision, from which the State Controller and State Treasurer appealed.  (*Id.* at pp. 385-386.)  The State Controller and State Treasurer argued Santa Margarita had legal authority to pay for the increased water quality costs and therefore was not entitled to subvention.  Relying on a statutory provision now contained in Government Code section 17556, this court agreed.  (*Connell,* at pp. 386, 397-398.)  Then, as now, Government Code section 17556, has provided in pertinent part that the Commission "shall not find costs mandated by the state . . . in any claim submitted by a local agency or school district, if, after a hearing, the [Commission] finds that:  [¶] . . . [¶] (d) The local agency or school district has the authority to levy service charges, fees, or assessments sufficient to pay for the mandated program or increased level of service." (Compare *Connell,* at p. 398, fn. 16, with Gov. Code, § 17556.)

*Connell* noted the California Supreme Court has held that Article XIII B, section 6, "requires subvention only when the costs in question can be recovered solely from tax revenues.  ([*County of Fresno v. State of California* (1991) 53 Cal.3d 482,] 487.) Government Code section 17556, subdivision (d), 'effectively construes the term "costs" in the constitutional provision as excluding expenses that are recoverable *from sources other than taxes*.  Such a construction is altogether sound.' " (*Connell*, *supra*, 59 Cal.App.4th at p. 398, quoting *County of Fresno*, at p. 487, italics added.)  Thus, *Connell* examined whether the Santa Margarita Water District had authority to pay for the increase in water quality from sources other than taxes.

This court, in *Connell*, held Water Code section 35470 provided Santa Margarita with authority to recover the costs of increased water quality as mandated by the state regulation.  (59 Cal.App.4th at p. 398.)  As *Connell* recounts, former Water Code

12

section 35470 (Stats. 1976, ch. 1044, § 1, p. 4664) then provided that "[a]ny district formed on or after July 30, 1917, may, in lieu in whole or in part of raising money for district purposes by assessment, make water available to the holders of title to land or the occupants thereon, and may fix and collect charges therefor.  The charges may include standby charges to holders of title to land to which water may be made available, whether the water is actually used or not.  The charges may vary in different months and in different localities of the district to correspond to the cost and value of the service, and the district may use so much of the proceeds of the charges as may be necessary to defray the ordinary operation or maintenance expenses of the district and for any other lawful district purpose."[3]  (*Connell*, *supra*, 59 Cal.App.4th at p. 398.)  Based on this statutory authority to levy fees, *Connell* held the water districts "have authority, i.e., the right or power, to levy fees sufficient to cover the costs."  (*Id.* at p. 401.)

In so holding, *Connell* rejected the Santa Margaritas' invitation "to construe 'authority,' as used in the statute, as a practical ability in light of surrounding economic

---

**3**      Water Code section 35470 currently provides:  "Any district formed on or after July 30, 1917, may, in lieu in whole or in part of raising money for district purposes by assessment, make water available to the holders of title to land or the occupants thereon, and may fix and collect charges therefor.  *Pursuant to the notice, protest, and hearing procedures in Section 53753 of the Government Code*, the charges may include standby charges to holders of title to land to which water may be made available, whether the water is actually used or not.  The charges may vary in different months and in different localities of the district to correspond to the cost and value of the service, and the district may use so much of the proceeds of the charges as may be necessary to defray the ordinary operation or maintenance expenses of the district and for any other lawful district purpose."  (Stats. 2007, ch. 27, § 29, p. 116, italics added.)  The italicized portion of Water Code section 35470 was added to comport with the protest provision adopted with Proposition 218.  (Legis. Counsel's Dig., Sen. Bill No. 444, Stats. 2007 (2007-2008 Reg. Sess.) Summary Dig., pp. 96-97 <http://www.leginfo.ca.gov/pub/07-08/bill/sen/sb_0401-0450/sb_444_bill_20070702_chaptered.pdf> [as of March 19, 2019], archived at <https://perma.cc/AQ2N-J8YD>.)

13

circumstances." (*Connell*, *supra*, 59 Cal.App.4th at p. 401.) Santa Margarita argued the new regulations would make reclaimed water unmarketable – with the result that users would switch to potable water. (*Id.* at pp. 401-402.) This court held the economic practicability argument "was irrelevant and injected improper factual questions into the inquiry" that "presented a question of law." (*Id.* at pp. 401, 402.)

Finally, this court noted but did not decide on a passing comment by Santa Margarita that, under Proposition 218, " 'the authority of local agencies to recover costs for many services [is] impacted by the requirement to secure the approval by majority vote of the property owners voting, to levy or to increase property related fees.' " (*Connell*, *supra*, 59 Cal.App.4th at p. 403.) This case takes up where *Connell* left off, namely with the question of whether the passage of Proposition 218 undermined water and irrigation districts' authority to levy fees so that they are entitled to subvention for state-mandated regulations requiring water infrastructure upgrades. The Water and Irrigation Districts do not argue this court wrongly decided *Connell, supra,* 59 Cal.App.4th 382, but only that the rule of decision was superseded by Proposition 218. Consequently, we proceed to examine the effect of Proposition 218 on the continuing applicability of *Connell.*

## C.

### *Proposition 218*

To determine whether and how Proposition 218 affects the entitlement of the Water and Irrigation Districts to subvention of the costs of state-mandated water upgrades, we survey the context within which Proposition 218 was passed by California voters. "Proposition 218 can best be understood against its historical background, which begins in 1978 with the adoption of Proposition 13. 'The purpose of Proposition 13 was to cut local property taxes. [Citation.]' (*County of Los Angeles v. Sasaki* (1994) 23

14

Cal.App.4th 1442, 1451.) Its principal provisions limited ad valorem property taxes to one percent of a property's assessed valuation and limited increases in the assessed valuation to two percent per year unless and until the property changed hands. (Cal. Const., art. XIII A, §§ 1, 2.) [¶] To prevent local governments from subverting its limitations, Proposition 13 also prohibited counties, cities, and special districts from enacting any special tax without a two-thirds vote of the electorate. (Cal. Const., art. XIII A, § 4; *Rider v. County of San Diego* (1991) 1 Cal.4th 1, 6-7.) It has been held, however, that a special assessment is not a special tax within the meaning of Proposition 13. (*Knox v. City of Orland* (1992) 4 Cal.4th 132, 141, and cases cited.) Accordingly, a special assessment could be imposed without a two-thirds vote." (*Howard Jarvis Taxpayers Ass'n. v. City of Riverside* (1999) 73 Cal.App.4th 679, 681-683 (*Howard Jarvis Taxpayers Ass'n.*).)

"In November 1979, the voters adopted Proposition 4, adding article XIII B to the state Constitution. Article XIII B—the so-called 'Gann limit'—restricts the amounts state and local governments may appropriate and spend each year from the 'proceeds of taxes.' (Art. XIII B,] §§ 1, 3, 8, subds. (a)–(c).)" (*City of Sacramento, supra,* 50 Cal.3d at pp. 58-59.) The Supreme Court in *City of Sacramento* noted that "Articles XIII A and XIII B work in tandem, together restricting California governments' power both to levy and to spend for public purposes." (*Id.* at p. 59, fn. 1.)

The Gann Limit applies to *taxes* rather than *fees*. "Article XIII B of the Constitution was intended to apply to taxation—specifically, to provide 'permanent protection for taxpayers from excessive taxation' and 'a reasonable way to provide discipline in tax spending at state and local levels.' (See *County of Placer v. Corin* (1980) 113 Cal.App.3d 443, 446, quoting and following Ballot Pamp., Proposed Stats. and Amends. to Cal. Const. with arguments to voters, Special Statewide Elec. (Nov. 6,

15

1979), argument in favor of Prop. 4, p. 18.)  To this end, it establishes an 'appropriations limit' for both state and local governments (Cal. Const., art. XIII B, § 8, subd. (h)) and allows no 'appropriations subject to limitation' in excess thereof (*id*., § 2).  (See *County of Placer v. Corin, supra*, 113 Cal.App.3d at p. 446.)  It defines the relevant 'appropriations subject to limitation' as 'any authorization to expend during a fiscal year the proceeds of taxes. . . .'  (Cal. Const., art. XIII B, § 8, subd. (b).)  It defines 'proceeds of taxes' as including 'all tax revenues and the proceeds to . . . government from,' inter alia, 'regulatory licenses, user charges, and user fees *to the extent that such proceeds exceed the costs reasonably borne by* [*government*] *in providing the regulation, product, or service . . . .*'  (Cal. Const., art. XIII B, § 8, subd. (c), emphasis added.)  Such 'excess' proceeds from 'licenses,' 'charges,' and 'fees' 'are but taxes' for purposes here.  (*County of Placer v. Corin, supra*, 113 Cal.App.3d at p. 451, italics in original.)  [¶]  Article XIII B of the Constitution, however, was not intended to reach beyond taxation."  (*County of Fresno v. State of California* (1991) 53 Cal.3d 482, 486-487.)

The Gann Limit does not require voter approval for imposition of special assessments.  (*Howard Jarvis Taxpayers Ass'n., supra,* 73 Cal.App.4th at p. 682.)  The court in *Howard Jarvis Taxpayers Ass'n.* recounted that, "[i]n November 1996, in part to change this rule, the electorate adopted Proposition 218, which added Articles XIII C and XIII D to the California Constitution.  Proposition 218 allows only four types of local property taxes:  (1) an ad valorem property tax; (2) a special tax; (3) an assessment; and (4) a fee or charge.  (Cal. Const., art. XIII D, § 3, subds. (a)(1)-(a)(4); see also Cal. Const., art. XIII D, § 2, subd. (a).)  It buttresses Proposition 13's limitations on ad valorem property taxes and special taxes by placing analogous restrictions on assessments, fees, and charges. [¶] First, Proposition 218 defines an 'assessment' as 'any levy or charge upon real property . . . for a special benefit conferred upon the real

16

property.' (Cal. Const., art. XIII D, § 2, subd. (b).) It defines a 'special benefit' as 'a particular and distinct benefit over and above general benefits conferred on real property located in the district or to the public at large. General enhancement of property value does not constitute 'special benefit.' (Cal. Const., art. XIII D, § 2, subd. (i).) Proposition 218 then provides that an assessment may be imposed only if (1) it is supported by an engineer's report (Cal. Const., art. XIII D, § 4, subd. (b)), (2) it does not exceed the reasonable cost of the proportionate special benefit conferred on each affected parcel (Cal. Const., art. XIII D, § 4, subds. (a), (f)), and (3) it receives, by mailed ballot, a vote of at least half of the owners of affected parcels, weighted 'according to the proportional financial obligation of the affected property.' (Cal. Const., art. XIII D, § 4, subds. (c)-(e)). [¶] . . . Four specified classes of preexisting assessments, however, are 'exempt from the procedures and approval process set forth in Section 4.' (Cal. Const., art. XIII D, § 5.) . . . Under article XIII D, section 5, subdivision (a) of the California Constitution (section 5(a)), a preexisting special assessment is exempt if it is 'imposed exclusively to finance the capital costs or maintenance and operation expenses for sidewalks, streets, sewers, *water*, flood control, drainage systems or vector control.' " (*Howard Jarvis Taxpayers Ass'n., supra*, at pp. 682-683, italics changed.)

**D.**

### *The Water and Irrigation Districts' Statutory Authority to Recover Costs from Ratepayers*

In approaching the Water and Irrigation Districts' argument regarding their statutory authority, or lack thereof, to impose fees for improvements required by the Water Conservation Act, we begin by considering the California Supreme Court's guidance in *Bighorn*, *supra*, 39 Cal.4th 205. *Bighorn* involved the question whether local voters could adopt an initiative measure to reduce a local water district's charges for

domestic water and to require the district to receive preapproval from the voters for any future increase. (*Id.* at p. 209.) Although *Bighorn* considered the question in terms of the voters' initiative powers, the California Supreme Court articulated an approach to understanding how voter powers to affect water district rates affect the ability of the water districts to recover their costs.

At the heart of *Bighorn* lies the distinction between majority *protest* procedures for fees that may occur after imposition of the fees and assessments in contrast to the voter-*approval* requirement imposed by Proposition 218 before new taxes may be imposed. The voter-approval requirement of article XIII C, in section 2, subdivision (b), provides that " '[n]o local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote,' and it provides, in subdivision (d), that '[n]o local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote.' " (*Bighorn, supra,* 39 Cal.4th at p. 211.) This voter-approval requirement, however, does not apply to levying fees for *water* service. Instead, section 6 of article XIII "expressly exempts water service charges from the voter-approval requirement that it imposes on all other fees and charges." (*Bighorn* at pp. 218-219.) The *Bighorn* court concluded that, "[a]t least as to fees and charges that are property related, section 6 of California Constitution article XIII D would appear to embody the electorate's intent as to when voter-approval should be required, or not required, before existing fees may be increased or new fees imposed, *and the electorate chose not to impose a voter-approval requirement for increases in water service charges*." (*Id.* at p. 219, italics added.) In other words, while new taxes require voter consent, the imposition of new water service fees do not require such preapproval.

18

Equally important for purposes of the issue presented in this case, the *Bighorn* court explored the power-sharing relationship between local agencies and the electorate when noting Proposition 218's addition of article XIII C, section 3, to the California Constitution "does not authorize an initiative to impose a requirement of voter preapproval for future rate increases or new charges for water delivery. In other words, by exercising the initiative power voters may decrease a public water agency's fees and charges for water service, but the agency's governing board may then raise other fees or impose new fees without prior voter approval. Although this power-sharing arrangement has the potential for conflict, *we must presume that both sides will act reasonably and in good faith, and that the political process will eventually lead to compromises that are mutually acceptable and both financially and legally sound*. (See *DeVita v. County of Napa* [(1995)] 9 Cal.4th [763,] 792-793 ['We should not presume . . . that the electorate will fail to do the legally proper thing'].) We presume local voters will give appropriate consideration and deference to a governing board's judgments about the rate structure needed to ensure a public water agency's fiscal solvency, and we assume the board, whose members are elected (see Stats. 1969, ch. 1175, § 5, p. 2274, 72B West's Ann. Wat.-Appen. [(1995 ed.] ch. 112, p. 190), will give appropriate consideration and deference to the voters' expressed wishes for affordable water service. The notice and hearing requirements of subdivision (a) of section 6 of California Constitution article XIII D will facilitate communications between a public water agency's board and its customers, and the substantive restrictions on property-related charges in subdivision (b) of the same section should allay customers' concerns that the agency's water delivery charges are excessive." (*Bighorn*, *supra*, 39 Cal.4th at pp. 220-221, italics added; fns. omitted.) Here, the Water and Irrigation Districts have statutory authority to impose fees on their customers without need to first secure voter approval.

Biggs is a water district governed by Division 13 of the Water Code, which is known as the California Water District Law. (Water Code, § 34000 et seq.) Within Division 13, Water Code section 35470 provides that the water districts in this case "may, in lieu in whole or in part of raising money for district purposes by assessment, make water available to the holders of title to land or the occupants thereon, *and may fix and collect charges therefor*." (Italics added.) This portion of Water Code section 35470 remains unchanged since this court's decision in *Connell*, *supra*, 59 Cal.App.4th at page 398. Water Code section 35470 expressly reflects the Legislature's determination that water districts may charge the necessary fees for water service to their customers.

We reach the same conclusion with respect to the irrigation districts even though they derive their statutory fee authority from elsewhere in the Water Code. Paradise, South Feather, Richvale, Oakdale, and Glenn-Colusa are irrigation districts governed by Division 11 of the Water Code, which is known as the Irrigation District Law. (Water Code, § 20500 et seq.) Within Division 11, Water Code section 22280 provides in pertinent part: "Any district may in lieu in whole or in part of levying assessments *fix and collect charges for any service furnished* by the district . . . ." (Italics added.) The italicized portion of Water Code section 22280 provides Paradise, South Feather, Richvale, Oakdale, and Glenn-Colusa with statutory authority for imposing fees for implementing the mandates of the Conservation Act.

The express statutory authority of the Water and Irrigation Districts to impose fees under Divisions 11 and 13 of the Water Code means the costs of complying with the Conservation Act are not subject to subvention because the costs are "recoverable from sources other than taxes" within the meaning of article XIII B. (*County of Fresno, supra*, 53 Cal.3d at p. 487.) As the California Supreme Court has held, "Article XIII B of the

20

Constitution . . . was not intended to reach beyond taxation." (*Ibid.*) Consequently, the Water and Irrigation Districts are not entitled to subvention. Government Code section 17556, subdivision (d), provides that subvention is not available if the local agency "has the authority to levy service charges, fees, or assessments sufficient to pay for the mandated program or increased level of service."

The Water and Irrigation Districts in this case do not dispute that Water Code sections 22280 and 35470 provide them with statutory authority to recover the costs necessary to comply with conservation goals imposed by the Conservation Act. Instead, the Water and Irrigation Districts deny they have the ability to impose fees because of the existence of protest procedures. For example, Government Code section 53755 delineates the procedural requirements for notice and hearing applicable to changes in property-related fees and charges. Section 53755, however, does not divest the Water and Irrigation Districts of the ability to raise fees for subvention purposes simply because it allows a majority protest procedure. (Gov. Code, § 53755, subds. (a)(1) & (b).) Instead, sections 22280 and 35470 expressly grant the Water and Irrigation Districts authority to impose fees and do so without prior voter approval. The existence of a power-sharing arrangement between the Water and Irrigation Districts and voters does not undermine the fee authority that the districts have under sections 22280 and 35470. (*Bighorn*, *supra*, 39 Cal.4th at pp. 220-221.)

Proposition 218 also imposes a majority protest procedure but also does not divest the Water and Irrigation Districts of their authority to levy fees. (Art. XIII D, § 6, subd. (a) & (c).) Article XIII D, section 6, requires a local agency to identify parcels to be subject to a new fee, calculate the fee amount, and provide notice to affected property owners of the proposed fee. (*Id.*, § 6, subd. (a)(1).) The local agency shall conduct a public hearing and consider all written protests filed by the affected property owners.

21

(*Id.*, § 6, subd. (a)(2).) If a majority of the property owners present written protests against the fee, the fee may not be imposed. (*Ibid*.) As with the statutory protest procedures, the *possibility* of a protest under article XIII D, section 6, does not eviscerate the Water and Irrigation Districts' ability to raise fees to comply with the Water Conservation Act.

As a constitutionally sound power-sharing arrangement, the protest procedure implemented by Proposition 218 is not properly construed as a deprivation of fee authority as the Water and Irrigation Districts urge. We disagree with the assumption of the Water and Irrigation Districts and amici that water customers' ability to file written protests by its very nature deprives local agencies of their ability to raise fees for necessary projects. Consistent with the California Supreme Court's reasoning in *Bighorn,* we presume local voters will give appropriate consideration and deference to state mandated requirements relating to water conservation measures required by statute. (*Bighorn*, *supra*, 39 Cal.4th at p. 220.) Consequently, we reject the Water and Irrigation Districts' proposition that the existence of the majority protest procedure enacted through Proposition 218 represents the evisceration of water and irrigation districts' legal authority to levy fees necessary to comport with state water laws. Proposition 218 implemented a power-sharing arrangement that does not constitute a revocation of the Water and Irrigation Districts' fee authority. (*Ibid.*)

We also reject the Water and Irrigation Districts' claim that, as a matter of practical reality, the majority protest procedure allows water customers to defeat the Districts' authority to levy fees. This contention is similar to the argument presented in *Connell* where Santa Margarita asserted the state mandated regulation was not economically practicable. (*Connell*, *supra*, 59 Cal.App.4th at p. 401.) We adhere to our holding in *Connell* that the inquiry into fee authority constitutes an issue of law rather

than a question of fact. (*Ibid.*) Fee authority is a matter governed by statute rather than by factual considerations of practicality.

The corollary of our continued adherence to the rule articulated in *Connell, supra,* 54 Cal.App.4th 382 is that fee authority is not controlled by whether the Water and Irrigation Districts have "tried and failed" to levy fees. We decline to adopt the trial court's try-and-fail approach that suggests the Water and Irrigation Districts may become entitled to subvention despite their continuing statutory authority to levy fees upon showing a district's water customers with majority voting power defeated the proposed levy. As noted above, *Bighorn* instructs that we presume voters will give appropriate consideration and deference to proposals of fees by the boards of the Water and Irrigation Districts. (*Bighorn*, *supra*, 39 Cal.4th at pp. 220-221.) Statutory authorization to levy fees – rather than practical considerations – conclusively determines whether the Water and Irrigation Districts are entitled to subvention. Thus, the authority conferred by Water Code sections 22280 and 35470 supports the decision of the Commission to deny the Water and Irrigation Districts' test claims.[4]

---

[4] We do not reach the Gann Limit argument tendered by the Counties and Cities amici because the argument was not raised by the Water and Irrigation Districts. Moreover, the Water and Irrigation Districts did not raise this issue in the trial court. Thus, we have no record to determine whether and to what extent the Water and Irrigation Districts even fund their operations from taxes for which they might be subject to the Gann Limit. Rather than speculate whether the Water and Irrigation Districts might run afoul of the Gann Limit, we leave that question for a case in which the issue is properly presented.

We also decline to address the Special Districts amici argument regarding the exclusion of enterprise special districts from the state mandate reimbursement. Again, this issue has not been raised by the parties and is not necessary to resolve the gravamen of this appeal. " 'Amicus Curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curiae will not be considered.' " (*Lance Camper Mfg. Corp. v. Republic Indemnity Co. of*

23

The Water and Irrigation Districts contend their argument is supported by "precisely the analysis this court performed in *Manteca Unified Sch. Dist. v. Reclamation Dist. No. 17* [(2017) 10 Cal.App.5th 730]." We disagree. *Manteca Unified Sch. Dist. v. Reclamation Dist. No. 17* (2017) 10 Cal.App.5th 730 (*Manteca*) involved the narrow question of whether a school district could claim a categorical exemption from reclamation district fees for levee maintenance and other reclamation work under Water Code section 51200 and Proposition 218. (*Id.* at p. 732.) Water Code section 51200 provides that "[t]he assessments levied by a [reclamation] district shall include all lands and rights of way within the district, owned by the State or by any city, county, public corporation, or utility district formed under the laws of the State *other than public roads, highways, and school districts*." (§ 51200, italics added; see also *Manteca*, *supra*, at p. 733.) And, as this court noted, "The passage of Proposition 218 in 1996 changed the rules pertaining to exemptions from assessment." (*Id.* at p. 737.)

In *Manteca*, this court concluded that "[a]rticle XIII D, section 4, subdivision (a), which supersedes section 51200 in both time and stature, commands that 'Parcels within a district that are owned or used by any agency [or] the State of California . . . shall not be exempted from assessment unless the agency can demonstrate by clear and convincing evidence that those publicly owned parcels in fact receive no special benefit.' " (*Manteca*, *supra*, 10 Cal.App.5th at p. 737.) For purposes of this case, however, *Manteca* is inapposite because it concerned only the narrow question of whether school districts are eligible for categorical exemption from fees levied by reclamation districts. *Manteca*

*America* (2001) 90 Cal.App.4th 1151, 1161, fn. 6, quoting *Eggert v. Pacific States S. & L. Co.* (1943) 57 Cal.App.2d 239, 251.)

Finally, we deny the Special Districts amici request for judicial notice of legislative history materials relating to special districts as unnecessary to the determination of the issue presented in this case.

24

did not address the question of whether the existence of a majority protest procedure so undermines a public agency's ability to raise fees to comply with a state mandate that subvention is required.

The Water and Irrigation Districts also rely on the inapposite case of *Capistrano Taxpayers Assn., Inc. v. City of San Juan Capistrano* (2015) 235 Cal.App.4th 1493. That case did not examine the effect of the majority protest procedure on the ability of government agencies to levy fees. Instead, *Capistrano* involved the issue of how public water agencies may formulate their rate structures for their customers to be in compliance with the proportionality requirements of Proposition 218. (*Id.* at pp. 1498, 1516.)

We are also not persuaded by the Water and Irrigation Districts' reliance on *Mission Springs Water Dist. v. Verjil* (2013) 218 Cal.App.4th 892. *Mission Springs* centered on the extent of the initiative power reserved to the people. The *Mission Springs* court held that because water districts did not have the power to set rates so low that they are inadequate to pay the costs of water supply that voters similarly lacked the same power through the initiative process. (*Id.* at p. 921.) That decision did not consider whether the majority protest procedure had any effect on the Water and Irrigation Districts' power to collect fees.

The Commission has brought to our attention the Legislature's passage of Senate Bill No. 231 (2017-2018 Reg. Sess.) (Stats. 2017, ch. 536, § 2 (SB 231)). The Water and Irrigation Districts asserted SB 231 was not relevant to the issue in this case. We agree. SB 231 was passed in response to the decision in *Howard Jarvis Taxpayers Ass'n v. City of Salinas* (2002) 98 Cal.App.4th 1351. *City of Salinas* held storm water drainage fees were a property-related fee requiring voter approval because storm water drains are not "sewers" that are exempt from the voter-approval requirement of article XIII D, section 6, subdivision (c). (*Id.* at p. 1355-1356.) SB 231 amended Government Code section

53750, subdivision (k), to expand the definition of "sewer" to include storm water systems for purposes of Article XIII C and XIII D. (Stats 2017, ch. 536, § 1.)

In this case, none of the parties argue the costs for upgrading water service that may be required by the Conservation Act are subject to voter approval. Such an argument would be untenable because SB 231 added Government Code section 53751, subdivision (h), to declare that "Proposition 218 exempts sewer and water services from the voter-approval requirement." (Stats. 2017, ch. 536, § 2.)[5]

## III

### *Subvention Eligibility for Richvale and Biggs*

Our conclusion that Proposition 218 does not undermine the statutory authority of the Water and Irrigation Districts to levy fees to pay for the costs of complying with the Conservation Act, obviates the need to consider whether the Commission erred in dismissing the test claims of Richvale and Biggs on grounds Richvale and Biggs are not eligible for subvention because they do not receive tax revenues. Richvale and Biggs – along with the other Water and Irrigation Districts – have statutory authority to impose or increase water fees under Water Code sections 22280 and 35470 in order to comply with the Conservation Act.

---

[5] Because the Commission's decision on the test claims is based on its conclusion the Water and Irrigation Districts had sufficient authority to meet goals imposed by the Conservation Act, the Commission asserts it did not determine the extent to which the water conservation goals constitute unfunded state mandates. However, the Water and Irrigation Districts assert the Commission did find the Conservation Act to impose unfunded state mandates. Because we affirm the Commission's decision on grounds the Water and Irrigation Districts have sufficient authority to recover costs from their ratepayers for water services, we do not need to reach the issue of whether the Conservation Act mandates water districts to incur any costs that would be subject to subvention if the Water and Irrigation Districts lacked legal authority to levy fees and assessments.

26

DISPOSITION

The judgment is affirmed. Respondent Commission on State Mandates and real parties Department of Finance and Department of Water Resources shall recover their costs, if any, on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

                              /s/
                        HOCH, J.

We concur:


        /s/
RAYE, P. J.


        /s/
BUTZ, J.